**BLUE ASH** (Village), Plaintiff, v. **CINCINNATI** (City), Defendant.

Common Pleas Court, Hamilton County.

No. A-165009.  Decided January 28, 1960.

558

William R. Matthews, Solicitor, The Village of Blue Ash, plaintiff.

James W. Farrell, Jr., City Solicitor, William A. McClain, Deputy Solicitor, for defendant.

Robert J. White, Amicus Curiae Citizens Development Committee, Cincinnati, Chamber of Commerce.

## OPINION

By BADER, J.:

This case comes before the Court on a demurrer filed by the plaintiff to the amended answer of the defendant.

The sole question for the Court to determine is whether or not the amended answer is sufficient in law and, in doing so, must determine whether or not one municipality, the City of Cincinnati in this case, can appropriate some 3,723.94 feet of a long established and utilized highway within the boundaries of another municipality, in this case the Village of Blue Ash, for a part of a "feeder type" airport.

It is fundamental in law that a demurrer searches the record and that the determination of whether or not a demurrer should be sustained or overruled must be taken from the pleadings filed in the case.

It has been urged by the City of Cincinnati, and the counsel for the Cincinnati Chamber of Commerce and the Citizens Development Committee in their briefs that a demurrer cannot be passed on at this stage of this case and, in no event, could it be passed on until evidence is heard to determine the superiority of the purposes between the present use as a public dedicated highway which has been used by the public for travel for many years, and the new purpose as part of a contemplated new "feeder type" airport. With this contention the Court does not agree but, to the contrary, is of the opinion that like most other cases there are sufficient allegations in the pleadings and, particularly, the answer to permit the Court to pass on the question of whether or not the demurrer should be sustained or overruled without the introduction of evidence at this time.

There is no question, and from the briefs of the plaintiff and the defendant, it appears that the parties are agreed that one municipality

may appropriate private property in another municipality with the same authority and right as it would appropriate private property within its own boundaries. Apparently this has been done.

This Court is not called upon at this time to determine whether or not the City of Cincinnati may or may not construct an airport within the boundary lines of the Village of Blue Ash.

**Section 4, Article XVIII, Ohio Constitution,** provides:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

**Sec. 717.01, paragraph (V), R. C.,** reads as follows:

"Acquire by purchase, gift, devise, bequest, lease, condemnation proceedings, or otherwise, real or personal property, and thereon and thereof to establish, construct, enlarge, improve, equip, maintain, and operate airports, landing fields, or other air navigation facilities, either within or without the limits of a municipal corporation, and acquire by purchase, gift, devise, lease, or condemnation proceedings rights of way for connection with highways, waterways, and electric, steam, and interurban railroads, and improve and equip such facilities with structures necessary or appropriate for such purposes; no municipal corporation may take or disturb property or facilities belonging to any public utility or to a common carrier engaged in interstate commerce, which property or facilities are required for the proper and convenient operation of such utility or carrier, unless provision is made for the restoration, relocation or duplication of such property or facilities elsewhere at the sole cost of the municipal corporation."

**Sec. 719.02 R. C.,** reads as follows:

"In the appropriation of property for any of the purposes named in §719.01 R. C., the municipal corporation may, when reasonably necessary, acquire property outside the limits of the municipal corporation."

The authority given to municipalities in the State of Ohio to purchase or condemn land is found in §717.01 R. C. See 121 Oh St 186.

It appears to this court that the procedure to be followed is extraordinary and the laws should be strictly construed. The owning and operation of an airport is not a governmental function but a proprietary function and as such assumes the character of a public utility because it tends to serve the public. See: syl. 2, 143 Oh St p. 141; 121 Oh St 186.

The City of Cincinnati, as a public utility, cannot exercise any more authority then is granted to any other public utility unless the Constitution or the laws of the State of Ohio specifically grant that authority, or the right to do certain things may be done by implication. The court has no right to read anything into the laws. The legislature assumes and is the only body which may enact laws. The court is the

medium for the interpretation of the laws passed by the legislature. See 29 Corpus Juris. (2nd) 863:

"Authorization as express or implied. While express statutory authorization is sufficient to authorize the taking of property devoted to public use, although it impairs or destroys the prior use, express authorization is unnecessary, it being sufficient if the right is conferred by necessary implication. When it becomes important to inquire whether such power arises from necessary implication in a given case, the legislative intent has to be arrived at by applying the enactment to its subject matter. The implication never arises except when necessary to permit the beneficial enjoyment and efficient exercise of a power expressly granted. It is not enough that the property sought to be taken will be a convenience to the company seeking to appropriate it. The implication does not arise if the powers expressly conferred can by reasonable intendment be exercised without the appropriation of property actually used for another public use, and in no event can it be extended further than the necessities of the case require. As regards the degree of necessity some decisions hold that no implication arises except from a necessity so absolute that without taking property previously devoted to a public use the grant itself would be defeated, and that the necessity must also arise from the very nature of things over which the corporation has no control. Other decisions, however, hold that the necessity from which the implication may arise is not an absolute and unconditional necessity as determined by physical causes, but a reasonable necessity to be determined from considerations of practicability, economy, and facilities under the peculiar circumstances of the cases, having due regard to senior rights and benefits to the public."

It will be noted that the statute above referred to gives specific authority to appropriate both within and without the corporate limits of the municipal corporation under certain conditions.

There can be no dispute that the roadway in question is a public thoroughfare which is used by many people daily and is admitted to be such by the defendant in its amended answer.

It is written in 11 McQuillin, Section 32.67 pp. 398, 399, 400, 401, 402 and 403:

"The authorities generally declare that where land has once been appropriated for public purposes in the exercise of eminent domain it cannot again be condemned to public use by the city or town for street or other purposes inconsistent therewith without statutory authority for doing so. It is equally well settled, however, that such authority may be conferred expressly or by necessary implication, provided the second use will not seriously or materially interfere with the first, or provided the second use is necessary to the public welfare, and the necessity and expediency of such a transfer are matters of legislative policy with which the courts have nothing to do. * * *

"On the other hand, if the second use is not consistent with the prior use, general authority to condemn is not sufficient. In other words, it is well settled that the power to take property for a second public use, when such an appropriation will supersede or destroy the first use, must be conferred expressly or by necessary implication.

"The rule then being that property already devoted to a public use cannot be taken for another use, at least if such use is an inconsistent one, without legislative authority expressly given or 'necessarily implied,' it becomes important to determine, if possible when authority can be considered to be necessarily implied. It has been held that such implication arises only from the language of the act, or from a state of facts showing such taking to be necessary in order to enjoy beneficially and to exercise efficiently the rights and privileges granted; and then the taking can be only to the extent of the necessity, and that necessity must arise from the nature of things over which the corporation desiring to take has no control,˙and not from a necessity created by such corporation for its convenience or economy. To illustrate, statutory authority to lay out and improve streets and to take private property for the purpose of local improvements does not, by implication, confer authority to condemn public library land for widening a street, since the first use will be destroyed. So it has been held that statutory power to condemn for a park does not authorize the taking of railroad lands where such intention is not plainly manifested. Furthermore, in some jurisdictions, it is expressly provided by statute that the second taking must be for a 'more necessary public use.' "

It has been held that a statute granting to a corporation the right of eminent domain does not authorize condemnation of land held in trust as a city street, since the law must be construed to relate to private property only, in the absence of an express or implied authority to take public lands. See: 62 Wash., p. 96; 68 New York, p. 175; 48 Oh St 273, syl. 4; 96 N. E. 238, syl. 1 and 2; 251 Ill., p. 265; 23 Oh St p. 510, syl. 1; 126 Colo. p. 267, syl. 6 and 7; 252 Ill. p. 475, syl. 1 and 2; 120 Atl. (2nd) p. 593, syl. 1; 110 Oh St p. 430, syl. 2; 96 N. E. p. 238, syl. 1.

It has been said that the right to appropriate the use of a street is not absolute but must be applied with reasonableness and with due regard to the rights of the public therein. It is not only the province, but the duty of a court in which appropriation proceedings are commenced to determine whether or not the proposed improvement to be construed would destroy or unreasonably interfere with the public easement. See: 19 O. Jur (2nd) at page 467; 120 Atl., p. 593, syl. 1 and 4.

The defendant admits in its amended answer that it has filed an application to assess compensation for the roadway in question in the Court of Common Pleas of this county in Case No. A-164843, and also that the real estate to be taken is the same property involved in the instant case which is within the corporate limits of the Village of Blue Ash and is being used as a public street.

The Court is of the opinion that:

1. There is a general authority to appropriate public property under certain conditions which do not apply to the case at bar.

2. The condemnation or appropriation of the public road in question would destroy, or unreasonably interfere with the public easement already in existence.

3. No provisions are made for the restoration, relocation or duplication of the roadway at the sole cost of the municipal corporation.

4. There is no express or implied authority to appropriate the real

estate in question and without which would tend to lead to a multiplicity of actions between municipalities.

5. The amended answer of the defendant is insufficient in law to set up a good defense in the case at bar.

In view of the above the Court is of the opinion that the demurrer to the amended answer should be sustained.

Defendant is granted thirty (30) days within which to plead.